UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INFORMATION** |
| Plaintiff, | ) | |
| | ) | 18 U.S.C. § 1349 |
| v. | ) | |
| BRIDGIT YVETTE MICHAUD, | ) | |
| Defendant. | ) | |

RECEIVED NOV 0 8 2019 CLERK, U.S. DISTRICT COURT MINNEAPOLIS, MINNESOTA

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At times relevant to the Information:

1. Victim Organization 1 was a non-profit organization in the greater Minneapolis-St. Paul, Minnesota area. Victim Organization 1 belonged to network of non-profit organizations that had locations throughout the United States.

2. Victim Organization 1's mission was to alleviate poverty, including by providing housing and related services to the homeless. Victim Organization 1 relied on funding from private donors, charitable foundations, and the United States Department of Housing and Urban Development, among others, to provide these services.

3. As part of its work to help the homeless, Victim Organization 1 made direct payments to landlords and other vendors (collectively "vendors"), who provided housing and related services to the organization's clients.


SCANNED NOV 08 2019
U.S. DISTRICT COURT MPLS

*United States v. Bridgit Yvette Michaud*

4. Victim Organization 1 required vendors to provide supporting documentation with a request for program funds. For example, landlords were required to provide a signed lease agreement and Internal Revenue Service (IRS) Form W-9 Request for Taxpayer Identification Number (TIN) and Certification (IRS Form W-9). To complete the IRS Form W-9, a vendor was required to certify under penalties of perjury that, among other things, the TIN was correct and belonged to the vendor. For an individual serving as a vendor, the TIN was usually the individual's Social Security Number (SSN).

5. Prior to disbursing program funds to a vendor, Victim Organization 1 also required its employees to submit a written check request along with the vendor's supporting documentation. Approval from a program manager or other supervisor from Victim Organization 1 was required before submitting the request to Victim Organization 1's accounts payable department for approval. If approved, accounts payable then transmitted a request to a bank via email to disburse a check directed to the vendor.

6. Defendant **BRIDGIT YVETTE MICHAUD** resided in the District of Minnesota.

7. Beginning no later than in and around April 2012, and continuing until in and around June 2017, employees of Victim Organization 1 (collectively "employee coconspirators"), including defendant **MICHAUD**, who worked on a program that provided housing assistance to the homeless, devised a scheme to defraud Victim

2

*United States v. Bridgit Yvette Michaud*

Organization 1 of charitable funds by recruiting friends and associates, to pose as vendors providing services to fictitious homeless clients.

## COUNT 1
(Conspiracy to Commit Wire Fraud)

8. The allegations contained in paragraphs 1 through 7 of this Information are realleged and incorporated here.

9. Beginning no later than in and around February 2016, and continuing until in and around June 2017, in the State and District of Minnesota, the defendant,

**BRIDGIT YVETTE MICHAUD**,

with others known and unknown to the United States Attorney, did knowingly conspire and agree to commit an offense against the United States, namely:

> To knowingly devise and participate in a scheme and artifice to defraud Victim Organization 1, and to obtain and retain charitable funds from Victim Organization 1, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1343, as further described below.

*Manner and Means of the Conspiracy*

10. It was part of the conspiracy that no later than in and around February 2016, C.L.C., **MICHAUD's** supervisor at Victim Organization 1, recruited **MICHAUD** to participate in a scheme to defraud Victim Organization 1 of charitable funds intended to help the homeless. Specifically, C.L.C. tasked **MICHAUD** with recruiting other members of the conspiracy, namely **MICHAUD's** boyfriend, A.J.O., and **MICHAUD's**

3

*United States v. Bridgit Yvette Michaud*

friend, L.H., to pose as vendors providing services to fictitious homeless clients (collectively "vendor coconspirators").

11. To induce Victim Organization 1 into giving these vendor coconspirators money and to conceal that the homeless clients whom they claimed to serve were fictitious, **MICHAUD** directed these vendor coconspirators to provide their names, SSNs, and other identifying information to complete fraudulent IRS Forms W-9, lease agreements, and check requests that falsely claimed that the vendor coconspirators provided housing to homeless clients. In fact, as defendant **MICHAUD** knew, the vendor coconspirators provided no housing or other service to Victim Organization 1's clients, and were not entitled to Victim Organization 1's funds.

12. It was further a part of the conspiracy that **MICHAUD**, with assistance from and at the direction of her supervisor and employee coconspirator, C.L.C., submitted the fraudulent check requests and supporting documentation to Victim Organization 1's accounts payable department through multiple means, including via email.

13. Among the writings, signs, signals, pictures, and sounds that defendant **MICHAUD** caused to be transmitted between at least in and around February 2016 and in and around June 2017 by means of wire communication in interstate and foreign commerce for the purpose of executing the scheme and artifice to defraud Victim Organization 1 were approximately 33 requests from Victim Organization 1 to its bank for checks totaling approximately $89,000, as well as the following email communications:

*United States v. Bridgit Yvette Michaud*

| Date (on or about) | Communication |
|---|---|
| February 16, 2016 | **MICHAUD** emailed A.J.O., who was then her boyfriend, a copy of a blank Form W-9 with instructions to complete it, stating, "Good Morning [A.O], I have attached the W9 for you to fill out for us to move forward with housing the 3 young men we discussed renting rooms from you. Thank you for taking out the time to meet with me and looking forward to working with you." **MICHAUD** then well knew that A.J.O. did not rent rooms or provide any other service to Victim Organization 1 clients. |
| On August 4, 2016 | **MICHAUD** emailed an accounts payable employee a check request for A.J.O., whom **MICHAUD** knew was not a landlord, stating "Hi Ladies, Hope you guys have had a great week so far! Please process!" The request included a letter, dated August 1, 2016, which read:<br><br>[Fictitious Homeless Client], I am writing to you per our conversation on 7/26/16 about your 500.00 for rent. I have not received your rent as of 8/3/16 and will need to have payment by 8/6/16 or we will need to look at some different options for your housing. Any questions or concerns I can contacted at [A.J.O. telephone number]. Thanks for your time and consideration in this matter. |
| February 6, 2017 | **MICHAUD** emailed an accounts payable employee requesting information about the status of a check request and providing confirmation of the spelling of vendor coconspirator L.H.'s first name to facilitate disbursement of charitable funds, when **MICHAUD** then well knew that L.H. was not a landlord. |

14. In reliance on the fraudulent check requests and supporting documentation, as well as **MICHAUD's** false representations via email and otherwise, accounts payable emailed Victim Organization 1's bank to request disbursement of charitable funds in checks directed to **MICHAUD's** coconspirators.

15. In furtherance of the scheme, **MICHAUD** provided checks to vendor

*United States v. Bridgit Yvette Michaud*

coconspirators in person and via employee coconspirators.

16. In furtherance of the scheme, **MICHAUD** instructed her vendor coconspirators to cash the checks and divide the proceeds with her, and in some cases, another employee coconspirator, which they diverted to their personal use.

17. On or about March 20, 2017, a Victim Organization 1 employee found a suspicious check request that **MICHAUD** and C.L.C. submitted on behalf of one of **MICHAUD's** coconspirators and for **MICHAUD's** benefit, which prompted Victim Organization 1 to begin an internal investigation into the fraud. **MICHAUD** went on leave from Victim Organization 1 shortly thereafter, and on or about June 5, 2017, Victim Organization 1 terminated **MICHAUD's** employment due to gross misconduct, including misappropriation of funds unrelated to the scheme alleged in this Information.

18. Even after Victim Organization 1 terminated **MICHAUD's** employment, **MICHAUD** sought to conceal and directed coconspirator L.H. to conceal the full scope of the conspiracy by attempting to dissuade L.H. from contacting and cooperating with law enforcement. For example, in a phone call on or about June 6, 2017, **MICHAUD** and C.L.C. encouraged L.H. to tell law enforcement that L.H. worked for someone who provided legitimate services to Victim Organization 1.

All in violation of Title 18, United States Code, Section 1349.

*United States v. Bridgit Yvette Michaud*

## **FORFEITURE ALLEGATIONS**

Count 1 of this Information is incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

As the result of the offense alleged in Count 1 of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1349.

If any property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 1349, 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

Dated: 11/8/2019

ERICA H. MacDONALD
United States Attorney

BY: MIRANDA E. DUGI
Attorney ID No. 5140546 (NY)
Assistant United States Attorney